IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JOE FORD and FOY FORD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil No. 2:17-cv-01884-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| THE GEORGETOWN COUNTY | ) | |
| SCHOOL DISTRICT, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matters are before the court on defendants Georgetown County School District et al.'s ("the School District") motion to dismiss, ECF No. 6. For the reasons set forth below, the court grants the motion to dismiss.

## I. BACKGROUND

This case stems from a series of encounters at Waccamaw High School ("Waccamaw") in the School District. The Cheer Booster Club was formed at Waccamaw in 2006 as a result of perceived inadequacies in funding for the all-female cheerleading program at Waccamaw. Plaintiff Foy Ford ("Foy") was the president of the Cheer Booster Club during the school year 2012–2013, while her husband plaintiff Joe Ford ("Joe") (together, "the Fords") was a volunteer with the Cheer Booster Club. In May and August of 2013, the Fords filed a series of complaints with the United States Department of Education Office for Civil Rights ("OCR"), alleging that the cheerleading team was being discriminated against in violation of Title IX of the Education Act of 1972, 20 U.S.C. § 1681 et. seq. (2000). Title IX provides in relevant part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the

1

benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  In October 2013, Joe posted comments on the Facebook page of a local newspaper criticizing the professional performance and conduct of the School District officials including School Superintendent Randall Dozier ("Dozier").

On November 26, 2013, the cheerleading coach informed the Fords that the School District had banned them from the Waccamaw campus.  On November 8, 2013, the attorney for the School District, Andrea White ("White"), sent a letter to the Fords which included a threat of legal action, including monetary damages, if the Fords "continued to post comments about school officials on the internet."  Soon thereafter, the Fords filed a complaint with OCR.  On July 15, 2014, the Fords received a letter from OCR that they had conducted an investigation and requested certain information from Dozier, and as part of this investigation that OCR learned the November 8, 2013 letter was issued with specific intent to prevent the Fords from posting critical comments.  On October 30, 2014, the Fords received another letter from White that was a copy of the November 8, 2013 letter, except the threat of legal action was removed.

The Fords filed this action under 42 U.S.C. § 1983 alleging violations of the First Amendment for freedom of association and freedom of speech against the School District and the Superintendent and members of the School District School Board.  On October 24, 2017, defendants filed a motion to dismiss, ECF No. 6, to which the Fords responded on November 21, 2017, ECF No. 10.  Defendants replied on November 28, 2017.  ECF No. 11.  The court held a hearing on February 23, 2018.  The motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir.2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. DISCUSSION

This motion to dismiss turns on one discrete issue—whether the discovery date of the First Amendment violations that the Fords allege was November 2013 or October 2014. If it is the former, then the three-year statute of limitations for a § 1983 claim bars the Fords' claims. If it is the latter, then the Fords may proceed in their claim. The court finds that it is the former, and dismisses this case with prejudice.

### A. Discovery Date of the Cause of Action

There is no statute of limitations for actions under § 1983, but it is well settled that the limitations period for § 1983 claims is determined by the analogous state law statute of limitations for a personal injury claim. Wallace v. Kato, 549 U.S. 384, 387 (2007). In South Carolina, the general statute of limitations for personal injury claims is codified in S.C. Code Ann. § 15–3–530(5), which provides that the statute of limitations is three years for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law." This three-year statute of limitations has been held to apply to § 1983 claims in the United States District Court for the District of South Carolina in several cases. See Ward v. Parole, Probation, and Pardon Bd., 2007 WL 3377163 (D.S.C. 2007), Rowe v. Hill, 2007 WL 1232140 (D.S.C. 2007); Huffman v. Tuten, 446 F. Supp. 2d 455 (D.S.C. 2006). Of course, this statute of limitations is informed by the "discovery rule," wherein "the statute of limitations [only] begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." True v. Monteith, 489 S.E.2d 615, 616 (S.C. 1997).

A review of the timeline of events as put forth in the complaint is useful here. From May 5, 2013, to August 23, 2013, the Fords filed three Title IX complaints against the School District, the Superintendent of the School District, and the Principal of the School District. On October 19, 2013, Joe Ford posted comments on a local newspaper's Facebook page criticizing the Georgetown School District and officials including Superintendent Dozier. On November 8, 2013, White, the School District attorney, sent a letter that threatened the Fords with legal action if they continued to post comments about school officials on the internet. Compl. ¶ 19.

The complaint raises two claims. The first claim alleges that defendants violated the Fords' First Amendment right to freedom of association by "banning them from the Waccamaw [ ] campus and prohibiting them from engaging in the volunteer activities at the school which they had done for a number of years." Compl. ¶ 25. The Fords were banned from Waccamaw in November 26, 2013, when the Fords "were told by the cheerleading coach that the Principal stated that the Plaintiffs could not return to the campus and, if they did, that they would be trespassing." Compl. ¶ 16. Therefore, the discovery date of the first claim for the First Amendment freedom of association claim was November 26, 2013.

In the second claim, the Fords allege that defendants violated their First Amendment right to freedom of speech by "threatening[ing] the Plaintiffs with legal action if they continued to post information about the school system or comment publicly about the school system." Compl. ¶ 28. "Federal law determines when a federal civil rights claim accrues." Rozar v. Mullis, 85 F.3d 556, 561–62 (11th Cir. 1996) (citation omitted). This accrual occurs "when the plaintiff has a complete and present cause of

action," which happens when she "can file suit and obtain relief." Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc., 522 U.S. 192, 201 (1997). For § 1983 claims, a cause of action is complete "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Lavellee v. Listi, 611 F.2d 1129, 1131 (5th Cir. 1980). The court considered the Fords' argument that the operative date of discovery for their second claim is October 14, 2014, when they filed a Freedom of Information Act ("FOIA") request against Superintendent Dozier to seek information that Dozier was using public funds—and White, the school's attorney—to illegally threaten the Fords. But it was on November 8, 2013 that White sent a letter to the Fords threatening them with legal action if they continued to post comments about school officials on the internet. Compl. ¶ 19. Indeed, the complaint itself states that after receiving the November 8, 2013, letter "for more than a year, Plaintiffs had exercised restraint in their First Amendment rights for fear that the members of the School Board and Superintendent would utilize the resources of the Government to suppress them in their exercise of their First Amendment rights." Compl. ¶ 23. White's November 2013 letter made clear that the Georgetown County School District was threatening legal action if the Fords engaged in any more protected speech, namely by posting online comments on the local newspaper's Facebook page. At this point, the Fords knew that all of the elements of their cause of action existed—and at the very least were put on notice that they might have a First Amendment claim—which triggered the running of the statute of limitations.

## B. Tolling of the Statute of Limitations

Even though the Fords knew or should have known of their claims in November, 2013, their suit might still be able to proceed if they can demonstrate that the court should toll the running of the statute of limitations. If the statute of limitations is not tolled, the Fords' suit is time-barred. Soon after the Fords received the November 8, 2013 letter from White, they filed a Title IX complaint with the Office of Civil Rights ("OCR"), which they now argue should toll the running of the statute of limitations. Certainly, OCR had the authority to investigate the Fords' Title IX complaint. But the complaint is unclear on when exactly the Fords filed a complaint with OCR—just that it was at some time between November 8, 2013, when they received the letter from White, and October 2014 when they received the emails from the Georgetown County School Board members as a result of the FOIA request. It is also unclear from the complaint what type of investigation OCR conducted against Dozier and the Georgetown County School District—namely, if it was an investigation into a possible First Amendment violation for White sending the letter, or if it was an investigation into a possible Title IX complaint against Georgetown County School District regarding the funding provided to the cheerleading team.

If OCR was investigating the Title IX violation of gender discrimination in how the cheerleading team at Waccamaw was funded—the issue at the root of the Fords' quarrel with the School District—then the connection between the OCR investigation and the filing of this case is more attenuated. Indeed, if OCR was simply investigating the possible gender disparities of the funding mechanism for the cheerleading team, then the Fords would certainly run into the statute of limitations. Assuming that the Fords filed a

complaint with OCR about the possible First Amendment violation, the question becomes whether the filing of an administrative complaint would toll the statute of limitations for the §1983 action such that the Fords could proceed with their suit. Certainly, the Fords have failed to offer any facts to support any other reason to toll the statute of limitations.

The question of whether filing a Title IX complaint tolls the statute of limitations for the filing of a § 1983 case for a First Amendment violation seems to be one of first impression within this circuit. However, the court draws upon the reasoning from similar cases. In <u>Johnson v. Railway Express Agency, Inc.</u>, 421 U.S. 454, 462–67 (1975), the U.S. Supreme Court held that the state statute of limitations was not tolled while a plaintiff pursued a Title VII administrative claim. More broadly, in <u>Trent v. Bolger</u>, 837 F.2d 657, 659 (4th Cir. 1988), the Fourth Circuit held that the "tolling [of state statute of limitations] does not apply in situations where a plaintiff pursues relief through parallel administrative proceedings." In <u>Trent</u>, the plaintiff was an auto mechanic who had filed an appeal to the Merit System Protection Board ("MSPB") for a claim of wrongful discharge before he brought an action about the breach of a collective bargaining agreement under the Postal Reorganization Act ("PRA"). <u>Id.</u> The Fourth Circuit held that where the collective bargaining agreement made clear that the agency grievance process could not be pursued independently of an action under the PRA, the filing of the administrative appeal with the MSPB tolled the statute of limitations for the claim under the PRA. <u>Id</u>. However, here it does not appear that the Title IX complaint process is a parallel administrative proceeding such that the statute of limitations should be tolled. Certainly, the parties did not provide—and the court was unable to find—any cases on this matter.

The court finds particularly persuasive Knickman v. Prince George's Cty., 187 F. Supp. 2d 559, 564 (D. Md. 2002), in which the court found—in the context of a plaintiff who filed a Title VII complaint before filing her employment discrimination case in state court—that the "[p]ursuit of an administrative complaint does not affect the limitations period for filing other claims." Applying this reasoning from the Title VII context to this Title IX claim, the Fords' pursuit of an administrative complaint with OCR about White's letter would not toll the statute of limitations.

The court now turns to the possibility that equitable tolling applies. Equitable tolling is a fairly discretionary remedy. Hooper v. Ebenezer Senior Servs. & Rehab. Ctr., 687 S.E.2d 29, 32–33 (S.C. 2009) (recognizing that "[t]he equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies" (internal quotation marks omitted)). That being said, equitable tolling is available when the plaintiff shows "(1) that [she] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (citation and internal quotation marks omitted) (alteration added). It is the Fords who bear the burden of showing entitlement to equitable tolling. Jackson v. Astrue, 506 F.3d 1349, 1353 (11th Cir. 2007). The Fords have not demonstrated that some "extraordinary circumstance" prevented them from pursuing their case in this court. Keeping in mind that "[e]quitable tolling is an extraordinary remedy which should be extended only sparingly," Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004), the court finds that equitable tolling does not apply here.

The complaint was filed on July 14, 2017. Because the statute of limitations for both of the Fords' claims began to run in November 2013, and because there is no basis on which to toll the the running of the statute of limitations, the court finds that the claims accrued outside of the three-year statute of limitations period. Accordingly, the court grants the motion to dismiss.

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 28, 2018
Charleston, South Carolina**